IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

WILLIAM WHITE,

                    Plaintiff,

          v.

UNITED PARCEL SERVICE,

                    Defendant.

HON. JEROME B. SIMANDLE

Civil No. 07-2464 (JBS)

**OPINION**

APPEARANCES:

F. Michael Daily, Jr., LLC
ATTORNEY AT LAW
216 Haddon Avenue Sentry Office Plaza
Suite 100
Westmont, NJ 08108
     Attorney for Plaintiff

Michael J. Wietrzychowski, Esq.
Harris Neal Feldman, Esq.
Tracey D. P. Overton, Esq.
SCHNADER HARRISON SEGAL & LEWIS, LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, NJ 08002-1165
     Attorneys for Defendant

**SIMANDLE**, District Judge:

## I.   INTRODUCTION

     This matter comes before the Court upon motion by Defendant,
United Parcel Service, to dismiss Plaintiff's, William White's
("White" or "Plaintiff"), claim pursuant to Fed R. Civ. P. 12(c).
Defendant United Parcel Service ("Defendant" or "UPS") moves for
judgment on the pleadings [Docket Item 10], arguing that
Plaintiff's complaint fails to state a cause of action upon which

relief can be granted.  (Def.'s Br. for J. on the Pleadings at 1.)  For the reasons discussed herein, Defendant's motion for judgment on the pleadings will be granted in part and denied in part.

## II.  BACKGROUND

### A.   Facts

The Complaint alleges that White suffered an ankle injury while in the course of his employment as a full-time package driver.  (Compl. ¶¶ 4, 7.)  As a result of his injury, Plaintiff is now unable to lift over seventy pounds or stand for an extended period of time, both of which are essential functions of his job as a package driver.  (Compl. ¶¶ 12, 16, 17.)  Plaintiff alleges that his requests for alternative employment at UPS were denied based on his disability.  (Compl. ¶¶ 16, 17.)  Plaintiff claims that UPS's denial of affording him with alternative employment is a violation of the New Jersey Law Against Discrimination Act ("NJLAD").  (Compl. ¶ 24.)  The Defendant contends that Plaintiff, since he admittedly could not perform the necessary functions of his job, is not entitled to NJLAD protection.  (Def.'s Br. at 6.)  Therefore, Defendant argues, Plaintiff's claim seeking relief under the NJLAD should be dismissed for failure to state a claim.  (Def.'s Br. at 6.)

Plaintiff William White began working for UPS as a part-time loader in 1987.  (Compl. ¶ 3.)  Plaintiff was promoted to full-

time driver in 1990 and was continuously employed by UPS through
May 28, 2002.  (Compl. ¶¶ 4-5.)  On May 28, 2002 Plaintiff
injured his right ankle while in the course of his employment.
(Compl. ¶ 7.)   Plaintiff was out of work for a number of months
because of his ankle injury but eventually returned to his full-
time driver position.  (Compl. ¶ 8.)  Plaintiff's ankle continued
to be aggravated and was diagnosed as "OCD."  (Compl. ¶ 10.)
Because of his ankle's aggravated condition, Plaintiff took a
second leave of absence from work.  (Compl. ¶ 9.)

     Plaintiff is limited in mobility and is now disabled as a
result of his injury.  (Compl. ¶ 11.)  Plaintiff's injury
prevents him from working in a broad range of jobs and he cannot
engage in heavy lifting or prolonged standing.  (Compl. ¶¶ 12,
16.)  Because Plaintiff's driver position at UPS required him to
lift seventy pounds and be capable of extended standing,
Plaintiff contacted UPS and his union to request that he be
afforded an alternative position consistent with his physical
limitations.  (Compl. ¶¶ 15, 17.)  UPS informed Plaintiff that he
was not qualified for a transfer because he could not perform the
essential functions of his existing position, which require him
to lift seventy pounds and stand for an extended period of time.
(Compl. ¶ 17.)  UPS then denied Plaintiff's return to employment.
(Compl. ¶ 19.)  Plaintiff claims UPS violated the NJLAD by
failing to provide him with alternative employment consistent

3

with his physical limitations.[1]

## B. Procedural History

Plaintiff filed his complaint seeking relief under the NJLAD in the Superior Court of New Jersey, Camden County.  UPS removed the case to the United States District Court of New Jersey on May 25, 2007 [Docket Item 1] and answered the complaint on June 1, 2007 [Docket Item 2].[2]  Defendant then filed the instant motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) [Docket Item 10].  Defendant contends that Plaintiff is not entitled to NJLAD protection because he, according to the Complaint, could not perform the essential functions of his job. (Def.'s Br. at 6.)  Therefore, Defendant moves to dismiss

---

[1]   Plaintiff mentions in the factual allegations of his complaint the existence of a Collective Bargaining Agreement (CBA) between Defendant UPS and Plaintiff's union.  The CBA, according to the Complaint, required Defendant to afford alternative employment to employees injured or disabled while at work.  (Compl. ¶ 14.)  However, Plaintiff does not claim in his Complaint that he is entitled to relief because Defendant violated its contractual obligation under the CBA.  (Compl. ¶¶ 24, 26).  Plaintiff only seeks relief under the NJLAD.  Id.  Both parties agree that Plaintiff did not need to exhaust his administrative remedies under the CBA before pursuing an NJLAD claim.  (Pl.'s Br. in Opp'n at 8.); (Def.'s Reply at 4.)  Therefore, this Opinion will not discuss the CBA as it is beyond the scope of the Complaint.  Rather, the Court will focus solely on whether the Complaint states a claim that Defendant violated the NJLAD.

[2]   The District Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.  According to the Notice of Removal, Plaintiff is a citizen of New Jersey, Defendant UPS has its principal place of business in Georgia and is incorporated in Delaware and the amount in controversy is in excess of $75,000.

Plaintiff's action for failure to state a claim. (Def.'s Br. at 6.)

## III.  DISCUSSION

### A.    Standard for a 12(c) Motion for Judgment on the Pleadings

The standard for a 12(c) motion for judgment on the pleadings is the same as the standard used for a 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  <u>Turbe v. Government of the Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991); <u>Wyeth v. Ranbaxy Laboratories, LTD</u>, 448 F. Supp. 2d 607, 609 (D.N.J. 2006).  On a Rule 12(c) motion, like a 12(b)(6) motion to dismiss, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  <u>Wyeth</u>, 448 F. Supp. at 609; <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 231 (3d Cir. 2008) (quoting <u>Pinker v. Roche Holdings Ltd.</u>, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

> While Rule 12(b)(6) does not permit dismissal of a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief above the speculative level."

<u>Phillips</u>, 515 F.3d at 234.  "To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the

allegations in the complaint are true (even if doubtful in fact).'" Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, ____ U.S. ____ , 127 S. Ct. 1955, 1965 (2007)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-1965 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. [Twombly, 127 S. Ct. at 1965 n.3.] This "does not impose a probability requirement at the pleading stage, but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id.

Phillips, 515 F.3d at 234.

## B.   NJLAD Requirements and Exceptions

The overreaching policy of the NJLAD is to eradicate "the cancer of discrimination." Fuchilla v. Layman, 537 A.2d 652, 660 (N.J. 1988).  Employment discrimination goes beyond the employer-employee relationship and involves the greater concern of the public interest in maintaining a work place free of discrimination.  Id.; Raspa v. Office of Sheriff of County of Gloucester, 924 A.2d 435, 442 (N.J. 2007).  The courts and

legislature have held that the NJLAD is to be construed liberally
and given a broad reach.  Raspa, 924 A.2d at 442.

The NJLAD generally prohibits discrimination in employment
on account of disability.

> All persons shall have the opportunity to
> obtain employment . . . without discrimination
> because of . . . disability . . . subject only
> to conditions and limitations applicable alike
> to all persons. This opportunity is recognized
> as and declared to be a civil right.

N.J. Stat. Ann. § 10:5-4.

The NJLAD prohibits "any unlawful discrimination against any
person because such person is or has been at any time disabled or
any unlawful employment practice against such person, unless the
nature and extent of the disability reasonably precludes the
performance of the particular employment."  N.J. Stat. Ann. §
10:5-4.1.  Pursuant to that provision, the law prohibits
disability discrimination in employment unless the individual's
disability "reasonably precludes" the employment at issue.

As a corollary, the NJLAD does not preclude employers from
taking adverse employment actions against disabled individuals
who are not able to perform the essential functions of their
jobs:

> Nothing contained in this act . . . shall be
> construed . . . to prohibit the establishment
> and maintenance of bona fide occupational
> qualifications . . . nor to prevent the
> termination or change of the employment of any
> person who in the opinion of the employer,
> reasonably arrived at, is unable to perform

7

> adequately the duties of employment, nor to preclude discrimination among individuals on the basis of competence, performance, conduct or any other reasonable standards . . . .

N.J. Stat. Ann. § 10:5-2.1.

> [T]he protection afforded an employer by N.J.S.A. 10:5-4.1 is no greater than that afforded by N.J.S.A. 10:5-2.1. Under both enactments, an employer found to have reasonably arrived at an opinion that a job applicant cannot do the job, either because the applicant is unqualified or because of a given handicap, cannot be found liable for discrimination against that applicant.

Andersen v. Exxon Co., U.S.A., 89 N.J. 483, 497 (1982).

The New Jersey Supreme Court has explained that if an employee is unable to perform essential functions of the job at issue, the NJLAD affords no protection. Raspa, 924 A.2d at 443. The implementing regulations are in accord:

> (a) It shall be lawful to take any action otherwise prohibited under this section where it can reasonably be determined that an applicant or employee, as a result of the individual's disability, cannot perform the essential functions of the job even with reasonable accommodation.
>
> [. . .]
>
> 3. The burden of proof is upon the employer . . . to demonstrate in each case that the exception relied upon is based upon an objective standard supported by factual evidence . . . .

N.J. Admin. Code § 13:13-2.8.  See also 38 N.J. Reg. 335(a) (Jan. 3, 2006) ("an individual with a disability need only show that he

8

or she can perform the essential functions of a job" to make out a prima facie case of disability discrimination under the NJLAD, not that the individual was able to perform all job functions).

Plaintiff claims that UPS violated NJLAD by refusing Plaintiff's request for alternative employment consistent with his physical limitations and failing to provide him with a reasonable accommodation.

> "The LAD does not specifically address reasonable accommodation, but our courts have uniformly held that the law nevertheless requires an employer to reasonably accommodate an employee's handicap." <u>Tynan v. Vicinage 13 of the Superior Court of N.J.</u>, 351 N.J. Super. 385, 396 (App. Div. 2002). Administrative regulations set out the specific requirements of the reasonable accommodation process mandated by the LAD. In brief, unless it would impose an undue hardship on the operation of the business, N.J.A.C. 13:13-2.5(b) requires an employer to make a "reasonable accommodation to the limitations of an employee . . . who is a person with a disability."

<u>Potente v. County of Hudson</u>, 187 N.J. 103, 110 (2006).  That regulation further explains, in relevant part, that there are no bright-line rules as to what constitutes a reasonable accommodation.

> The determination as to whether an employer has failed to make reasonable accommodation will be made on a case-by-case basis.

> 1. Under circumstances where such accommodation will not impose an undue hardship on the operation of an employer's business, examples of reasonable accommodation may include:

[. . .]

iv. Job reassignment and other
similar actions.

2. An employer shall consider the
possibility of reasonable accommodation
before firing, demoting or refusing to
hire or promote a person with a
disability on the grounds that his or
her disability precludes job
performance.

3. In determining whether an
accommodation would impose undue
hardship on the operation of an
employer's business, factors to be
considered include:

[. . .]

iv. The extent to which accommodation
would involve waiver of an essential
requirement of a job as opposed to a
tangential or non-business necessity
requirement.

N.J.A.C. § 13:13-2.5(b).

To succeed on a failure to accommodate claim, a plaintiff

must show that he made his employer aware, if only in plain

English, of his need for a reasonable accommodation for a

handicap and that the employer failed to engage in a search for

an accommodation.

Once such a request is made, "both parties
have a duty to assist in the search for
appropriate reasonable accommodation and to
act in good faith." . . . This process must
identify the potential reasonable
accommodations that could be adopted to
overcome the employee's precise limitations
resulting from the disability. Once a

10

> handicapped employee has requested assistance,
> it is the employer who must make the
> reasonable effort to determine the appropriate
> accommodation.
> To show that an employer failed to participate
> in the interactive process, a disabled
> employee must demonstrate: (1) the employer
> knew about the employee's disability; (2) the
> employee requested accommodations or
> assistance for her disability; (3) the
> employer did not make a good faith effort to
> assist the employee in seeking accommodations;
> and (4) the employee could have been
> reasonably accommodated but for the employer's
> lack of good faith.

Tynan v. Vicinage 13 of the Superior Court of N.J., 351 N.J.

Super. 385, 400-01 (App. Div. 2002)(citations omitted).

Defendant does not dispute that, for the purposes of this

motion, UPS was aware of Plaintiff's disability, that there was

no interactive dialogue and that Defendant refused Plaintiff's

request for alternative employment.  (Def.'s Reply at 2-3.)

Rather, Defendant argues that since Plaintiff admittedly could

not perform the essential functions of a full-time package car

driver, Defendant was not under a duty to accommodate Plaintiff.

If Plaintiff could not be reasonably accommodated, than the last

element of a prima facie case for failure to engage in an

interactive process is not met.  Tynan, 351 N.J. at 401.

Defendant relies on the recent New Jersey Supreme Court

case, Raspa v. Office of Sheriff of County of Gloucester, supra.

In Raspa, the plaintiff was a corrections officer who, due to a

progressive illness, was restricted to minimum or no contact with

11

inmates.  Id. at 439.  The plaintiff argued that although he
could not perform the essential duties of a corrections officer,
defendant had a duty to reasonably accommodate him by creating a
permanent light duty position.  Id. at 439-40.  The defendant
contended that since the plaintiff was unable to have contact
with inmates, which was an essential function of the job, he was
unqualified for the position.  The Defendant argued that because
an employer does not have a duty to accommodate an unqualified
employee, the plaintiff was not entitled to any accommodation
under the NJLAD.  Id. at 441.

    The New Jersey Supreme Court focused their analysis on
whether plaintiff's "disability reasonably precluded the
performance of *the particular employment*."  N.J.S.A. 10:5-4.1;
Raspa, 924 A.2d at 443 (emphasis added).  The court also
recognized that "The LAD 'leaves the employer with the right to
fire or not to hire employees who are unable to perform the job,
whether because they are generally unqualified or because they
have a handicap that in fact impeded job performance.'" Id.
(quoting Jansen v. Food Circus Supermarkets, Inc., 541 A.2d 682
(N.J. 1982)).  The court found that the plaintiff's disability
reasonably precluded the performance of the particular employment
as a corrections officer because all of the corrections officer
positions required contact with inmates.  Id. at 339.

    Next, the court in Raspa determined that the NJLAD does not

12

require an employer to create a new position for a disabled
employee if no suitable full-time position exists.  Id. at 444.
The court found that the plaintiff's request for permanent light
duty, when the employer only had temporary light duty positions,
was not a reasonable accommodation.  Id. at 445.

> The LAD does not require that an employer
> create an indefinite light duty position for a
> permanently disabled employee if the
> employee's disability, absent a reasonable
> accommodation, renders him otherwise
> unqualified for a full-time, full-duty
> position.

Id.

     UPS relies on the New Jersey Supreme Court's holding in
Raspa that "an employee must possess the bona fide occupational
qualifications for the job position that the employee seeks to
occupy in order to trigger an employer's obligation to reasonably
accommodate the employee to the extent required by the LAD."  Id.
at 437.

     Plaintiff argues that Raspa is distinct from the case at bar
because its holding is limited to whether a "light duty position
must be permanently awarded to an individual when there was no
other available accommodation at the place of employment."
(Pl.'s's Br. in Opp'n at 5.)  The plaintiff in Raspa was seeking
a permanent light duty position.  The employer in Raspa did not
have permanent light duty positions; rather, a light duty
position was a "temporary way station or bridge between an

inability to work due to injury and a return to full time employment status." Raspa, 924 A.2d at 445. Here, in the instant case, Plaintiff contends that he is not seeking to transform a temporary position into a permanent one. Instead, Plaintiff is seeking to obtain an already existing alternative position that is consistent with his physical limitations.

It is undisputed that Plaintiff was unable to perform the essential functions of his job as a full-time package driver because he could not lift seventy pounds and he could not stand for extended periods of time. The question before the Court is whether Defendant was required to consider Plaintiff for alternative employment consistent with his physical limitations when Plaintiff admittedly could not perform the essential functions of his existing job. As explained below, because the Court cannot determine from the pleadings that Plaintiff was unqualified "for the job position [he] *seeks* to occupy," Raspa, 924 A.2d at 437 (emphasis added), the Court shall deny the motion.

### C.  Analysis

When a disabled employee seeks a transfer from one existing position to another that the employer denies and the employer fires the employee, there are two potential bases for liability because there have been two distinct adverse employment actions. First, the Court must examine whether the employee was denied

14

consideration for the transfer on account of his or her disability.  The NJLAD protects job applicants, and employers may avoid liability when they refuse to consider disabled applicants only if the applicants cannot perform the essential functions of the jobs they are seeking.  See N.J.S.A. § 10:5-4; Id. § 10:5-12(a); Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 953, 956 (3d. Cir. 1996)(finding if an employer was biased in his hiring evaluation of a job applicant because of a perception that the job applicant was handicapped or disabled, the job applicant can establish a cause of action under the NJLAD).

Second, employees are protected from termination under the NJLAD.  N.J.S.A. § 10:5-12(a).  However, as Raspa made clear, employees unable to perform the essential functions of their existing jobs need not be accommodated in these positions, whether by transfer, job restructuring, or otherwise.

These inquiries are distinct because, as alleged here, an employee may become unable because of his disability to perform his current job but retain the ability, skill and talent to perform other existing jobs.  A disabled person's inability to do a particular class of work does not provide license to an employer to refuse to consider his application, just as it would consider any other application from a new or existing employee, to perform an existing job he is qualified to perform.  Such a disabled employee is not requesting a transfer as an

15

accommodation, but rather is seeking new employment with the employer and must be considered along with other applicants unless the employer reasonably concludes that the individual is unable to perform the job he is seeking.  N.J. Stat. Ann. § 10:5-2.1.

### 1.  Plaintiff's Termination

It is undisputed that Plaintiff was unable to meet the physical requirements of his existing position as a full-time package car driver because he could not lift more than seventy pounds or stand for long periods of time.  Plaintiff's Complaint does not mention any accommodation that could have been made to enable him to physically perform his specific job as a full-time driver.  Rather, Plaintiff admits that the only request he made to UPS was that he be given an alternative position consistent with his physical limitations.

The inquiry into an employee's ability to perform the essential functions of a job centers on the employee's particular position, not his ability to perform other jobs with an employer. The statute indicates that it is unlawful discrimination for an employer to fire a person on the basis of disability, "unless it can be clearly shown that a person's disability would prevent such person from performing a *particular* job."  N.J. Stat. Ann § 10:5-29.1 (emphasis added).  The New Jersey Supreme Court emphasized that the employee could be terminated if he could "no

longer perform the essential functions of *his* job." <u>Rapsa</u>, 924
A.2d at 435 (emphasis added).  This court has also found that an
inquiry into reasonable accommodation must center on the ability
of the employee to perform his "particular" employment.  <u>Taylor
v. Virtua Health, Inc.</u>, No. 05-4271, 2007 WL 1827094, *4 (D.N.J.
June 25, 2007).

     The Plaintiff's complaint states that his physical
limitations "prevent him from heavy lifting and prolonged
standing" and that he needed "alternative employment consistent
with [his] physical limitations."  (Compl. ¶ 16.)  Even
construing the complaint in the light most favorable to the
plaintiff, the complaint openly concedes that the physical
requirements of a full-time driver were outside the Plaintiff's
physical limitations.  Therefore, he did not have the bona fide
occupational qualifications for his position.

     Because Plaintiff could not perform the essential functions
of his job, UPS was within its right to terminate the employee
from that position.  N.J. Stat. Ann. § 10:5-2.1.  Accordingly,
insofar as the Complaint can be construed as stating a claim
against UPS for terminating his job as a full-time package
driver, that claim shall be dismissed.

### 2. Consideration of Plaintiff for Alternative Employment at UPS

     However, there is still an issue of whether UPS failed to
consider Plaintiff for other existing positions at UPS based

solely on his disability.  The Complaint alleges "UPS has refused to offer William White any of such alternative positions asserting that in order to qualify for an alternative position, William White would have to be able to lift seventy pounds and be capable of extended standing."  (Compl. ¶ 17.)  The Complaint also states "UPS has various positions that would qualify as alternate positions that would not require an individual to lift seventy pounds and/or engage in prolonged standing."  (Compl. ¶ 18.)  The Complaint alleges that UPS did not consider Plaintiff for any alternative positions he was seeking because he could not perform the functions of the job he was leaving.  This allegation states a claim under the NJLAD.

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment."  N.J. Stat. Ann. § 10:5-4.1.  "All persons shall have the *opportunity to obtain employment* . . . without discrimination because of . . . disability *subject only* to conditions and limitations applicable alike to all persons."  Id.  § 10:5-4.  Plaintiff was entitled to be considered for any position at UPS that was consistent with his physical limitations and other abilities.  See N.J. Stat. Ann.  § 10:5-2.1 (permitting bona fide occupational

18

qualifications).  Plaintiff was unqualified for one position as a
package car driver, but that does not allow UPS to refuse to
consider Plaintiff for all other available positions based on his
disability.  Plaintiff was entitled to consideration for any
position for which he meets the bona fide occupational
qualifications and, in his Complaint, Plaintiff adequately
alleges that UPS failed to consider him for such positions solely
because of his disability.

If UPS did not consider Plaintiff for an available
alternative job solely because of his disability, and Plaintiff's
disability did not prevent him from performing the essential
functions of the alternative position, then such an act by UPS
would be in violation of the NJLAD.

Plaintiff has alleged facts in his complaint sufficient to
state a claim for relief under the NJLAD.  However, the scope of
the action is limited.  To the extent that the Complaint can be
interpreted as stating a claim against UPS for terminating
Plaintiff's job as a full time package car driver, that claim
will be dismissed.  Plaintiff openly conceded in his Complaint
that he did not possess the bona fide occupational qualifications
to perform the essential functions of that position.  Therefore,
UPS was within its right to terminate Plaintiff from his position
as a full time package car driver and did not need to accommodate
him with a transfer or otherwise.

19

Yet Plaintiff may proceed on his claim that UPS refused to consider Plaintiff for available alternative employment based solely on his disability.  Plaintiff was not entitled to be automatically placed in an alternative position by UPS under the NJLAD.  <u>Raspa</u>, 924 A.2d at 445.  However, Plaintiff was entitled under the NJLAD to be considered by UPS for any available employment that was consistent with his disability and for which he met the bona fide occupational qualifications.  <u>Id.</u> at 437.  Whether Defendant extended such consideration to Plaintiff is a factual matter that remains to be developed through discovery.

V.   **CONCLUSION**

For the foregoing reasons, Defendant's motion for judgment on the pleadings shall be granted in part and denied in part, and the accompanying Order is entered.


**August 4, 2008**                              **s/ Jerome B. Simandle**
Date                                            JEROME B. SIMANDLE
                                                U.S. District Judge

20